UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                    Criminal No. 19-10446-RGS

PLACIDO PEREIRA

**ORDER ON RENEWED MOTION FOR RELEASE (#202)**

KELLEY, U.S.M.J.

I.      Introduction.

The government has overwhelming evidence that Mr. Pereira and three co-defendants were selling fentanyl in Brockton in September 2019,[1] and that Mr. Pereira was directly involved in four sales to an undercover police officer. (#218 at 1.) The sales were of small, "street-level" quantities, for example, the fentanyl he allegedly sold on September 4, 2019, weighed 2.36 grams. (#206 Exh. B.)

During a search of Mr. Pereira's residence after his arrest, the police seized a bag of what was alleged to be 95 grams of fentanyl, "a large quantity of different types of marijuana," a Glock .380 firearm, $5,600 in cash, and the cell phone that the group utilized to take orders for fentanyl. *Id*. at 1-2.

---

[1] The government alleges that Mr. Pereira is a leader of the "Head Shot Mafia" gang. (#212 at 1, 7 n.4.) He denies being in the gang. (#206 at 13.) The court finds that the record is not developed on Mr. Pereira's involvement with or leadership of this gang and so does not consider any alleged gang affiliation in making its decision here.

In August 2021, the government disclosed to Mr. Pereira that the alleged 95 grams of fentanyl seized from his home, which had been analyzed 15 months earlier, was in fact mannitol, which is not a controlled substance. *Id*. at 6-9. By the time the government disclosed the certificate, Mr. Pereira had been detained for 22 months.

On October 24, 2019, when this court ordered that Mr. Pereira be detained, the court noted that he was facing a potential mandatory minimum sentence of 15 years (ten years for the fentanyl and five years consecutive to that sentence for the firearm) and that 95 grams of fentanyl had been seized from his home. (#28.) Mr. Pereira appealed the order and Judge Stearns, in affirming the order, took note of the same facts. (#72 at 2.)

In September 2021, after the certificate concerning the 95 grams of mannitol came to light, the government superseded the indictment to eliminate the charge that Mr. Pereira possessed with intent to distribute over 40 grams of fentanyl under 21 U.S.C. § 841(b)(1)(B)(vi), which carried a 10-year minimum mandatory. (#212 at 1.) Mr. Pereira is now charged with conspiracy to distribute fentanyl (Count I), distribution of fentanyl, based on the sales to the undercover officer (Counts II-IV, VII), possession with intent to distribute marijuana, (Count VIII), felon in possession of a firearm (Count IX), and possession of a firearm in furtherance of a drug trafficking crime (Count X). (#170). Thus, he no longer faces a 10-year minimum mandatory sentence; he still faces a 5-year minimum mandatory, on the charge of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(i), which would run consecutively to any other term of imprisonment imposed. Mr. Pereira posits that if convicted on all counts in the superseding indictment after trial, his Guidelines range would be 123-138 months. (#206 at 10.) The government disagrees, estimating that his range would be 147-168 months if he pleads guilty to all counts. (#212 at 7 n.4.)

2

Mr. Pereira has moved for release, arguing that his medical conditions make him especially vulnerable to the COVID-19 virus and that the length of his pretrial detention, now over two years, violates his constitutional right to due process, especially given the government's failure to provide Mr. Pereira with exculpatory evidence, that is, the negative drug certification, in a timely manner. (#206 at 1-2.)  For the reasons set out below, the court denies the motion, because of the strength of the government's proof concerning Mr. Pereira's danger to the community. *See United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986).

II.    <u>Due Process Concerns with Regard to the Length of Pretrial Detention.</u>

The due process clause of the United States Constitution may be violated if pretrial detention is so lengthy as to constitute punishment without trial. The First Circuit has explained that the primary factors guiding the determination when due process requires release from pretrial detention are set out in *United States v. Accetturo,* 783 F.2d 382, 388 (3d Cir.1986):

> Because due process is a flexible concept, arbitrary lines should not be drawn regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial. Instead, we believe that due process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits. Moreover, these judgments should reflect such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity.

*Zannino*, 798 F.2d at 547.

As the First Circuit in *Zannino* made clear, "[t]here is no set period after which detention becomes punitive." *United States v. Cardona*, No. 17-cr-30022-TSH, 2020 WL 1905308, at *1 (D. Mass Apr. 20, 2020) (citing *Zannino*, 798 F.2d at 547). The analysis is case-specific. In *Cardona*, for example, Judge Hillman found that a defendant charged with cocaine and heroin

conspiracies for which he faced a 15-year minimum mandatory sentence should be released, where the contemplated detention period until trial was 32 months, he played a less influential role in the conspiracy than others, where the case had been continued due to circumstances beyond either party's control, and where conditions could mitigate the danger he posed to the community. *Id*. at *2; *see also United States v. Daniels*, No. 98-cr-30040, 2000 WL 1611124 (D. Mass. Oct. 5, 2000) (defendant in drug case released after two years pretrial detention).

The court will first discuss the government's role in the delay of the case and then consider other factors set out in *Zannino*, including the length of pretrial detention, the strength of the government's case on the merits, the seriousness of the charges, and the strength of the government's proof that defendant poses a risk of flight or danger to the community.

III.    <u>The Government's Delay in Producing the Drug Certification.</u>

It is undisputed that the government delayed for 15 months in providing the defense with the drug certification that showed that the 95 grams of suspected fentanyl was not a controlled substance. (#206 at 9.) As set out above, the substance was submitted to the state crime laboratory for testing soon after it was seized, on October 22, 2019, and it was analyzed 6 months later, on May 16, 2020. *Id*. The results were not disclosed to the defense, however, until August 2021. (#218 at 6.)

In order to assess whether the government was at fault for any delay in the case, the court ordered the government to file a supplemental memorandum explaining in detail how the delay in providing the drug certification to Mr. Pereira occurred. (#217.) In brief, the government explained that the laboratory to which the drugs in this case were sent for testing, the Massachusetts State Police Crime Laboratory, was not the laboratory that the government usually uses, and the government was unfamiliar with the reporting practices of the laboratory. (#218 at 2.) The court

4

will not go point by point through the government's description of its communications with defense counsel and the laboratory concerning the testing of the drugs. Suffice it to say that the government's account demonstrates serious inattention to the case.  The certification concerning the bag of mannitol was exculpatory evidence material to guilt and punishment, and the government had a duty to disclose it to the defense in a timely fashion. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Local Rules of the United States District Court for the District of Massachusetts provide that the government produce such evidence automatically within 28 days of arraignment, and the government has a continuing duty to supplement such evidence. Local Rule 116.2. The government here, as it acknowledges (#218 at 7), failed in its duty. It was not until August 2021, after receiving an email from defense counsel specifically referencing the bag of suspected fentanyl that had been seized from Mr. Pereira's home, that government counsel contacted the laboratory and learned that the bag had been tested 15 months earlier, in May 2020. *Id*. at 6. The government also learned at that late date that the bag of alleged fentanyl seized from co-defendant Jason Miranda's girlfriend's home had never been tested,[2] nor had the bag from Mr. Pereira's first sale to the undercover policeman, on September 4, 2019.[3] *Id*. at 6-7.

Mr. Pereira filed a response to the government's filing concerning the reasons for the delay in producing the certification, asking that the court require the government to produce "all email and other written communications" regarding the testing of seized and purchased drugs in this case for an *in camera* inspection, to determine whether the government's delay "was mere inexcusable neglect, or intentional prosecutorial misconduct." (#219 at 11.)

---

[2] When the bag was finally tested, it too, was not fentanyl, but sucrose. (#218 at 2.)

[3] The bag from the September 4, 2019 sale was positive for fentanyl. (#218 at 7.)

The court declines to ask the government for further explanation, as the court has sufficient information to decide the question of detention, and the court finds that the explanations given by government counsel at this point indicate inattention rather than deliberate suppression of the evidence. Mr. Pereira has filed a motion to dismiss the indictment, now pending, before Judge Stearns (#198, motion, #209, supplemental memorandum in support), based on these same facts, and questions concerning the motives of the government may be addressed by Judge Stearns as appropriate in connection with that motion.

The relevant question here is, did the government's failure to provide Mr. Pereira with the certification concerning the mannitol directly contribute to the delay in this case?  Undoubtedly it did. While it is impossible to apportion the time precisely, there is no question that given Mr. Pereira's original charges, where he was facing a 10-year minimum mandatory sentence because of the weight of the fentanyl involved, he was unable to resolve his case until he knew what the government's proof was concerning the weight of the drugs. This is true notwithstanding the COVID-19 pandemic and all the delays that have occurred as a result of it: COVID-19 has not relieved the government of its duty to provide defendants with exculpatory evidence. It is fair to say that the government's delay in providing Mr. Pereira with the certification, from the time the government should have known about it in May 2020 to the time it provided the certification to the defendant in August 2021, is attributable to the government.

IV.    Factors Relevant to the Initial Detention Decision.

A.    The Government's Proof that Defendant Is a Flight Risk or Danger to the Community.

1.    Flight Risk.

While the parties disagree over what Mr. Pereira's Guidelines range is now, by his own estimate is he facing a substantial range of about 10 years after trial. (#206 at 10.) Mr. Pereira

argues that another thing that has changed since he was first detained is that he is no longer a career offender under the Guidelines, because of the First Circuit's June 2021 decision in *United States v. Abdulaziz*, 998 F.3d 519, 531 (1st Cir. 2021) (Massachusetts conviction for possession with intent to distribute marijuana does not qualify as a "controlled substance offense" under the Guidelines). Thus, he argues, in addition to no longer facing a 10-year minimum mandatory, he is no longer facing the catastrophic effects that being deemed a career offender would have on his Guidelines range. *Id*. The government appears to disagree with this argument, *see* #212 at 7 n.4. The court will not speculate here concerning whether Mr. Pereira will be found to be a career offender under the Guidelines, whether the government has a strong case that the marijuana found in Mr. Pereira's residence supports the charge of possession of a firearm in furtherance of a drug trafficking offense, or what sentence Judge Stearns is likely to give Mr. Pereira. There is no doubt, however, that the fact that Mr. Pereira was not in possession of 95 grams of fentanyl dramatically reduces his exposure in this case.

Mr. Pereira, 35 years old, was born in Cape Verde in 1986 and lived there until 1994, when he immigrated to the United States with his mother. He subsequently became a U.S. citizen. He has lived in the Boston area since he came to this country and many of his family members reside here, including his son, his parents, his sister, and others. He proposes to be released to live with his sister in New Bedford under home detention. (#206 at 6.) His sister has offered to post the equity in her home to secure an appearance bond for Mr. Pereira. *Id*.

The government argues that Mr. Pereira previously avoided arrest in connection with a prior case in federal court, where he was also charged with selling drugs, in that case, crack cocaine. In December 2008 he went to Cape Verde to visit an uncle. In his absence he was charged in this court with conspiracy to distribute cocaine base and knew of that fact. When he returned to

the United States in 2010 he was arrested, prosecuted, and eventually sentenced to 30 months, *see* 10-cr-10160-WGY. The government argues that even though he happened to be in Cape Verde when the arrest warrants in that case were issued in December 2008, he avoided prosecution by staying there and only came home when "the coast was clear." (#212 at 3 n.2.) The defense insists he returned knowing that he would be arrested. The court finds that on the present record it is impossible to discern his motives in returning, but in any event, it does not appear that he went to Cape Verde in order to avoid prosecution, and it does appear that he returned, if not promptly, at least before "the coast was clear." Because on the present record it does not appear that Mr. Pereira fled, and he did eventually return to face charges, the court will not presume that he fled prosecution in that case when considering detention here.

2. <u>Danger to the Community</u>.

Mr. Pereira has a substantial prior record. Only looking at convictions for which he was sentenced to prison, the record indicates that he was convicted of carrying a firearm, for which he received a year in the House of Correction, in 2004; he was convicted of assault with a gun for which he received another year in the House of Correction, with a second year suspended, in 2006; and he was convicted of conspiracy to distribute cocaine base in connection with the prior federal case referenced above in 2010, for which he eventually served 30 months, with an additional year for violating supervised release. In that case, like this one, the government alleged that Mr. Pereira engaged in street-level distribution of illegal drugs as part of a gang. (10-cr-10160-WGY, #24 at 4, government's sentencing memorandum.)

The docket of that case shows that after his release from prison, Mr. Pereira faced multiple supervised release violations, including one based on new charges in the Brockton District Court for possession of two firearms in his residence. As mentioned above, eventually Judge Young

sentenced him to 12 months incarceration to be followed by no additional supervised release. *Id*. #116. As for the Brockton case that triggered his final supervised release violation, it apparently was transferred to Plymouth Superior Court and in 2014 he was convicted of possession with intent to distribute marijuana for which he was sentenced to 2 years, and possession of a firearm without a permit for which he was sentenced to 3 years in state prison. It appears that within about 2 years after his release from that case, he engaged in the conduct resulting in these charges, for selling fentanyl and possessing marijuana with intent to distribute and a firearm.

3.   Medical Issues.

It is undisputed that Mr. Pereira has serious, long-standing medical issues that make him vulnerable to COVID-19. He already contracted COVID-19 while in custody and he apparently suffered greatly in recovering from it. (#206 at 3.) He has attached to his memorandum an affidavit from a doctor who has not treated Mr. Pereira but who has reviewed his medical records from the Wyatt Detention Facility, and states that even though he previously had COVID-19, and has been vaccinated, if he contracts the virus again he has a very high risk of serious illness. (#206-1.) The court accepts this representation for purposes of deciding the question of detention.

V.   Findings and Conclusion.

The court makes the following findings in accordance with the due process analysis set out in *Zannino*, 798 F.2d at 547. Mr. Pereira has been detained awaiting trial for 28 months, a very long time, and presumably will be detained for at least several more months before the district court can resolve his case. The court finds that the government, in failing to provide Mr. Pereira with exculpatory evidence for 15 months prior to trial, contributed at least in part to the lengthy pretrial delay in this matter, while Mr. Pereira played no part in the delay.

As stated above, the government has strong evidence that Mr. Pereira was selling fentanyl in concert with others, however, the court does not have enough information to gauge the strength of the government's case on the charge of possession of a firearm in connection with a drug trafficking offense. The factor concerning the seriousness of the case weighs in Mr. Pereira's favor. His case is not particularly serious, as federal criminal cases go. He is alleged to have engaged in street-level sales of fentanyl and to have possessed a firearm in connection with selling marijuana. He is not alleged to have brandished or used the firearm or committed any acts of violence in furtherance of drug distribution.

With regard to the strength of the government's proof that Mr. Pereira is a flight risk, the court finds that because of the proposed stringent conditions of release and because Mr. Pereira's sister is willing to put up the considerable equity in the home she owns to secure a bond for his release, and because Mr. Pereira is facing a less draconian sentence than he previously was, the government at this time would not meet its burden on risk of flight, and thus that factor, too, weighs in Mr. Pereira's favor.

However, the court finds that the strength of the government's proof concerning Mr. Pereira's risk of danger to the community weighs heavily against him and tips the scale in favor of continued detention. In 2004 and 2006, Mr. Pereira was given escalating sentences in the House of Correction for gun-related offenses.  In 2008 he was charged in this court with the same conduct of which he is accused here: street-level drug sales in concert with others.  He was sentenced to 37 months for that conduct, later decreased to 30 months because of the shift in the Guidelines ranges for crack cocaine, *see* 10-cr-10160-WGY, #33, (order reducing sentence re crack cocaine offense).

He then repeatedly violated the terms of his supervised release, ultimately having it terminated with a 12-month sentence because he was arrested yet again, for possession of 2

10

firearms in his residence. On that state charge, he was ultimately sentenced to 3 years in state prison, roughly the same as the federal sentence he had previously served, for illegal gun possession and possession of marijuana with intent to distribute. Then, not long after release from that sentence, he was arrested on the present case, for selling fentanyl to an undercover officer and having a large amount of marijuana and a gun in his residence. It seems that Mr. Pereira, in spite of being repeatedly arrested, convicted, sentenced, and released, will not stop selling drugs or possessing firearms.

The conditions that Mr. Pereira has asked the court to impose do not mitigate the risks that he poses to the community. He has demonstrated before that he is difficult to supervise. Given his history over many years, the risk that he will acquire firearms is high, and the resultant danger is clear, particularly for someone under home detention who must be visited at home by probation.[4]

The court is sensitive to the arguments concerning Mr. Pereira's health and does not discredit his argument that he is especially vulnerable to COVID-19. The court accepts defendant's argument that he would be better protected from exposure to COVID-19 and could receive better medical care outside of custody than in it. Nevertheless, the court has an obligation to take into consideration the safety of the public, and history teaches that Mr. Pereira is not deterred from selling drugs or possessing firearms by being under court supervision.

For the above reasons, the court denies Mr. Pereira's motion for release from pretrial detention (#202).

February 7, 2022

/s/ M. Page Kelley
M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE

---

[4] Mr. Pereira has proposed a condition that probation officers may search his house and car at any time they choose. U.S. Probation has no protocols for regularly searching the homes or cars of supervisees; this type of practice would be unworkable and dangerous for probation officers.